FILED
2024 Sep-20 AM 09:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EDDIE GRAY HOLT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:24-cv-00398-RDP** |
| | } | |
| **GRAY TELEVISION, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

This matter is before the court on the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants Gray Television, WTOK TV, Jacque Harms, and Lauren Carson (collectively, "Defendants"). (Doc. # 15). Eddie Gray Holt ("Plaintiff"), who is proceeding *pro se*, responded to the Motion. (Doc. # 24). The Motion has been fully briefed. (Docs. # 15, 24, 27). After careful review, and for the reasons discussed below, Defendants' Motion (Doc. # 15) is due to be granted.

## I. Factual Background

This action arises from Plaintiff's arrest on January 7, 2021. (Doc. # 1 at ¶ 7). Plaintiff was charged with three counts of child pornography – that is, sending, receiving, and possessing child sexual abuse material. (Docs. # 1 at ¶ 7; # 24, at 2). Plaintiff alleges that, on that same day, Defendants reported this information on WTOK TV and posted it on their website. (Doc. # 1 at ¶ 7). On September 15, 2022, Plaintiff's charges were dismissed. (*Id.* at ¶ 8). Plaintiff alleges that he contacted Defendant Harms, provided proof that the charges had been dismissed, and requested that the story on his arrest be removed or updated. (*Id.*). Plaintiff further alleges that Defendant

Harms refused to update the story or take down the information that had been posted on the website. (*Id.*).

At the time of his arrest, Plaintiff alleges that he was a candidate for Ward 2 City Councilman for the City of Meridian, Mississippi. (*Id.* at ¶ 7). He also alleges that he was a political activist, and had a podcast called "Reaching Out With Eddie," where he exposed the "illegal acts and wrong doing of government officials, city officials, politicians, and the law enforcement community." (*Id.*).

On March 29, 2024, Plaintiff filed this action *pro se* against Defendants, asserting two claims: (1) Malicious Intent to Destroy Plaintiff's Reputation, and (2) Malicious and Intentional Embarrassment to Plaintiff. (Doc. # 1 at 4-5). In asserting these claims, Plaintiff alleges that "Defendants showed a reckless disregard for the fact by their actions, policies and/or their omissions of the facts. Which has violated Plaintiff's right to fair dealings, freedom of speech, and to live life without unjust false accusations." (*Id.*). Plaintiff also alleges that Defendants "failed to properly supervise and train their employees which lead to the malicious behavior of their employees . . . ." (*Id.* at ¶ 19). Based on the allegations, Defendants have interpreted Plaintiff's Complaint to allege defamation. (Doc. # 15 at 7-12). Defendants have also addressed claims of negligent and intentional infliction of emotional distress, negligent supervision, and violation of Plaintiff's right to fair dealings and freedom of speech. (*Id.* at 12-15).

Defendants moved to dismiss Plaintiff's original Complaint (Doc. # 1) for lack of subject matter jurisdiction, lack of personal jurisdiction, improper service of process, improper venue, and failure to state a claim for which relief can be granted. (Doc. # 4). On May 14, 2024, Plaintiff filed an Amended Complaint. (Doc. # 7). Plaintiff's Amended Complaint contains the same claims as his original Complaint, with the only change being that he now alleges compensatory and punitive

damages totaling $2,275,000. (Compare Doc. # 1 and Doc. # 7). On May 28, 2024, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. (Doc. # 15). In this Motion, Defendants moved to dismiss Plaintiff's Amended Complaint for improper service, lack of personal jurisdiction, and failure to state a claim for which relief can be granted. (*Id.*). In his response to Defendant's Motion, Plaintiff asserts that service on Jacque Harms and Lauren Carson was cured. (*See* Docs. # 20-24). Defendants subsequently filed a Reply in Support of the Motion to Dismiss Plaintiff's Amended Complaint. (Doc. # 27).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for

relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

The court recognizes that Plaintiff is appearing *pro se*, that filings by *pro se* litigants are to be more leniently construed, and that such litigants are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *Evans v. Georgia Reg'l Hosp*., 850 F.3d 1248, 1253 (11th Cir. 2017) (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). However, notions of leniency do not excuse a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Nor does this leniency require or allow courts "to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## III. Discussion

Defendants seek to dismiss all claims asserted against them in Plaintiff's Amended Complaint. In particular, Defendants argue: (1) the court lacks personal jurisdiction over the Defendants; (2) venue is not proper in this court, and (3) Plaintiff's complaint fails to state a claim for which relief can be granted. The court addresses each argument below.

### A. Personal Jurisdiction

Defendants move to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "A federal district court in [Alabama] may exercise personal jurisdiction over a nonresident defendant to the same extent that [an Alabama] court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Under its long-arm statute, "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993)); *see also* Ala. R. Civ. P. 4.2 (permitting jurisdiction over nonresident defendants on any basis "not inconsistent with the constitution of this state or the Constitution of the United States"). Thus, this court may exercise personal jurisdiction over a defendant so long as that jurisdiction is consistent with federal due process principles.

The Supreme Court has recognized two types of personal jurisdiction that are consistent with the Fourteenth Amendment's Due Process Clause – general jurisdiction and specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). In considering whether personal jurisdiction complies with due process, the court must consider

"whether the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant subject to general jurisdiction in a forum may be sued in that forum on all claims against it, even if the claims have no connection to the forum. *Goodyear*, 564 U.S. at 919. By contrast, a defendant that is subject only to specific jurisdiction may only be sued with respect to claims that arise out of, or relate to, the defendant's contacts with the forum. *Id.* at 923-24.

For general jurisdiction to exist, the defendant's "affiliations with the State" must be "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). As the Supreme Court noted in *Daimler*, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 137 (quoting *Goodyear*, 564 U.S. at 924). A corporation is regarded "at home" where they are incorporated and where they have their principal place of business. *Id.* In this case, Defendant Gray Television is incorporated in Delaware and headquartered in Georgia and (as Plaintiff admits) owns Defendant WTOK TV, which is headquartered in Mississippi. (Doc. # 7 at ¶ 6). Defendants Jacque Harms and Lauren Carson are both residents of Mississippi. (*Id.*). Therefore, the court sitting in Alabama cannot exercise general jurisdiction over the Defendants.

The court is also unable to exercise specific jurisdiction over the Defendants. "Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

"This fair warning requirement is satisfied if the defendant has purposefully directed his activities at the forum." *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Plaintiff admits that "the malicious acts and negligent behavior that give rise to [his] claims occurred in Meridian, Lauderdale County, Mississippi." (Doc. # 1 at ¶ 6). Plaintiff has made no showing that Defendants purposefully directed their activities at Alabama. Plaintiff alleges that "Defendants reported the news of the Plaintiff's arrest on WTOK TV and posted the arrest on their website and the world wide web." (Doc. # 1 at ¶ 7). The court agrees with Defendants that this broadcast and website from a Mississippi news station are merely passive, and do not support that Defendants' activities were purposefully directed at Alabama. While Plaintiff states that Defendants' reporting of his arrest caused him to be investigated by Social Services in Alabama (Doc. # 1 at ¶ 10), the court agrees with the Defendants that, based on Plaintiff's own allegations, this is "merely an attenuated contact based on Plaintiff's actions in Alabama." (Doc. # 27 at 4). For specific jurisdiction to exist, Defendant's contacts "must be purposeful on the part of the defendant[;] . . . [j]urisdiction will not be supported because of 'random, fortuitous, or attenuated contacts.'" *Butler v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1265 (N.D. Ala. 2000) (quoting *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990)). Here, Defendants, operating in Mississippi, have not directed their activities at Alabama, and therefore, this court cannot exercise specific jurisdiction over the Defendants.

**B. Venue**

In the alternative, Defendants move to dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3). Plaintiff bears the burden of showing that venue is proper. *Pinson v. Rumsfeld*, 192 F. App'x. 811, 817 (11th Cir. 2006) (citing *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)). Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is proper

"(1) in a judicial district in which any defendant resides, if all defendants are residents of [that] State"; or in "(2) a judicial district in which a substantial part of the event or omissions giving rise to the claim occurred[.]" Defendants are not residents of Alabama, and Plaintiff has acknowledged this on two occasions. (Docs. # 1 at ¶ 6; #7 at ¶ 6). Defendant Gray Television Inc. is incorporated in Delaware and headquartered in Georgia. (Doc. # 7 at ¶ 6). Gray Television owns WTOK TV, which is headquartered in Mississippi. (*Id.*). Both Jacque Harms and Lauren Carson are resident citizens of Mississippi. (*Id.*). Plaintiff has also stated that all "behavior that g[a]ve rise to Plaintiff's claims occurred in Meridian, Lauderdale County, Mississippi." (Docs. # 1 at ¶ 6; # 7 at ¶ 6). Therefore, Plaintiff has not met his burden showing that the Northern District of Alabama is a proper venue for this action. Accordingly, the motion to dismiss is due to be granted for this additional reason.

To be clear (and fair), under Section 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). Indeed, as a matter of fairness, a "court should transfer if dismissal would result in a statute of limitations barring the plaintiff from refiling her claim." *Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171, 1175 (M.D. Ala. 2010) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 466-67 (1962)). However, here, it would not be in the interest of justice to transfer this action. It is time-barred based on Plaintiff's failure to file this action within the two-year limitation period. *See* Ala. Code § 6-2-38(k). So, transfer to the Southern District of Mississippi – or any other district court – would be futile. Thus, it is appropriate for this court to dismiss this action in accordance with 28 U.S.C. § 1406(a).

**C. Failure to State a Claim for Which Relief Can be Granted**

In addition to the procedural deficiencies discussed above, Defendants also argue that Plaintiff's Complaint should be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

A district court sitting in diversity applies the choice-of-law rules of the forum state. *Rosa & Raymond Parks Inst. For Self Dev. v. Target Corp.*, 812 F.3d 824, 829 (11th Cir. 2016). In Alabama, the choice of law for substantive law is governed by the principle of *lex loci delicti*, which means Alabama courts "will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 57 (Ala. 2007) (quoting *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So.2d 819, 820 (Ala. 1991)). Since the injury allegedly occurred in Mississippi (Docs. # 1 at ¶ 6; # 7 at ¶ 6), Mississippi law will govern the substantive law.

Under Mississippi law, to establish a defamation claim, a plaintiff must prove four elements, one of which is that the defendant made "a false and defamatory statement concerning plaintiff." *Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002). Defendants argue (and the court agrees) that Plaintiff cannot prove a defamation claim because Defendants' statements were true: Plaintiff was actually arrested and charged – and that is exactly what Defendants reported. Moreover, this claim is barred by Mississippi's fair report privilege. That is, even based on Plaintiff's allegations, Defendants merely reported accurate information that was obtained from law enforcement. (Doc. # 15 at 7). *See McDonald v. Raycom TV Broad., Inc.*, 665 F. Supp. 2d 688, 690-92 (S.D. Miss. 2009) (granting summary judgment for television station that "did no more than accurately broadcast information that had been furnished directly by law enforcement officials"). None of the information included in the news story is in dispute or challenged by the

Plaintiff as being false. (*See generally* Docs. # 1, 7). Although Plaintiff alleges Defendants' actions caused him "undue hardship and unrelenting embarrassment" (Doc. # 1 at ¶ 1), this does not support a defamation claim. Because even Plaintiff acknowledges the information Defendants reported was true, Plaintiff's defamation claim fails as a matter of law.[1]

Defendants also argue that to the extent Plaintiff claims Defendants defamed him, Plaintiff has failed to exhaust his remedies. They assert that "under Mississippi law, the plaintiff must, in writing, serve notice to a television station to their regular place of business with the alleged defamatory statement at least ten days before filing suit." (Doc. # 15 at 8 citing Miss. Code § 95-1-5(1)). While Plaintiff claims he asked Defendant Harms to remove or update the story after his charges were dismissed (Doc. #1 at ¶ 8), he has not alleged that he provided written notice to the station. Because Plaintiff has not shown that he provided written notice to Defendants, he failed to exhaust his remedies pursuant to Mississippi law.

Defendants also contend that Plaintiff's claim was not filed within the statutory limitations period. Under Alabama law, the statute of limitations of a defamation claim is two years[2] and begins to run from the date of publication. Ala. Code § 6-2-38(k) ("All actions of libel or slander must be brought within two years."); *see Poff v. Hayes*, 763 So. 2d 234, 242 (Ala. 2000). The two-year "statute of limitations for actions alleging libel or slander prescribes a period that runs from

---

[1] Because Plaintiff has failed to establish his defamation claim, his claims of negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress also fail because of the fair report privilege. *See McDonald*, 665 F. Supp. 2d at 692 (granting summary judgment for television statement and foreclosing plaintiff's claims for negligent supervision and negligent or intentional infliction of emotional distress "since all their claims are based on the very same factual predicate as their defamation claim").

[2] A district court sitting in diversity applies the choice-of-law rules of the forum state. *Rosa & Raymond Parks Inst.*, 812 F.3d at 829. Pursuant to Alabama's choice of law rules, courts apply the procedural law of the forum state, and generally, statues of limitations are procedural matters. *King v. S. Poverty L. Ctr., Inc.*, 2023 WL 3061825, at *7 (M.D. Ala. Apr. 24, 2023). Therefore, Alabama's statute of limitations applies. But, even if it could be said that Mississippi law provides the applicable statute of limitations, in Mississippi a defamation claim must be filed within one year of the allegedly defamatory statement. Miss. Code § 15-1-35.

the date of publication -- that is the date on which the injury to the plaintiff's reputation occurs and the cause of action is completed." *Poff*, 763 So. 2d at 242; *see also Harris v. Winter*, 379 So. 2d 588, 590 (Ala. 1980) ("It is the law of Alabama that a cause of action for libel accrues when the libelous matter is published." (citations omitted)). Plaintiff's argument that the statute of limitations period began to run on September 15, 2022, when the charges against him were dismissed (Doc. # 24 at 3), is off the mark. The statute of limitations period began to run when the allegedly defamatory statement was published by Defendants, which Plaintiff himself alleges was on January 7, 2021. Therefore, Plaintiff ran out of time to file this lawsuit two years later on January 7, 2023. Because Plaintiff waited to file this case until March 29, 2024, the claim should also be dismissed for this additional reason.

Next, Plaintiff claims that Defendants harmed him by failing to remove or update the news story. (Doc. # 7). But, Defendants had no obligation to do so. First, as a general matter, news organizations do not have a duty to retract, remove, or update previously-published true stories based on subsequent developments. *Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015) (noting that later-occurring developments "cannot undo historical facts or convert once-true facts into falsehoods"); *Rogatkin v. Raleigh Am., Inc.*, 69 F. Supp. 3d 294, 298 (D. Mass. 2014) ("The publication of true but historical facts (even if outdated) about a person cannot be defamatory as a matter of law."); *see also Pacheco Quevedo v. Hearst Corp.*, 2019 WL 7900036, at *6 (Conn. Super. Ct. Dec. 19, 2019) ("[T]he law of defamation does not impose a duty to update news coverage with later developments."). Mississippi law provides that the obligation to issue a correction, update, or retraction only arises where the statement made was false. Miss. Code § 95-1-5(2). As discussed above, because the statement was not false (a fact that Plaintiff does not dispute), Defendants had no obligation to update the story once Plaintiff's charges were dismissed.

Moreover, imposing such an obligation on a news organization would violate the news station's First Amendment rights to freedom of speech. *See Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 ("It has yet to be demonstrated how governmental regulation of [editorial control and judgment] can be exercised consistent with First Amendment guarantees of a free press . . . .").

In his Amended Complaint, Plaintiff also alleges that Defendants "violated [his] right to fair dealings" (Doc. # 7) and violated his "freedom of speech." (Doc. # 7). Both of these claims are non-starters. Under Mississippi law, "a party cannot plead a plausible claim for breach of the covenant of good faith and fair dealing against a party with which it has no contract." *Ross v. Miss Lou Mobile Home Movers, LLC*, 2019 WL 6108710, at *4 (S.D. Miss. May 20, 2019). Plaintiff has not alleged that a contract exists between him and any of the Defendants. For this reason, Plaintiff cannot support such a claim.

Plaintiff's First Amendment claim is similarly unsupported. The First Amendment only protects individuals against state action. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 802 (2019) ("The Free Speech Clause of the First Amendment prohibits only *governmental*, not *private*, abridgment of speech."). Defendants are not state actors, so they cannot be liable for violating Plaintiff's First Amendment rights.

Plaintiff also vaguely alleges that Defendants treated him differently than other citizens (Doc. # 7 at ¶ 8). Defendants have interpreted this allegation to implicate the Equal Protection Clause of the Fourteenth Amendment. (Doc. # 15 at 14 n.7). Like the First Amendment, the Fourteenth Amendment only protects individuals against state action. *See Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Bos., Inc.*, 515 U.S. 557, 566 (1995); *see also Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) ("[The Fourteenth] Amendment erects no shield against merely

private conduct . . . ."). Defendants are not state actors, so Plaintiff cannot assert a Fourteenth Amendment claim against them.

For all these reasons, transferring this action to a court in Mississippi would be futile.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. # 15) is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this September 20, 2024.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE